22-04556MB

## AFFIDAVIT IN SUPPORT OF

## AN APPLICATION FOR A SEARCH WARRANT

I, Robert Figueroa, Special Agent of United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (hereinafter referred to as "HSI"), being duly sworn, declare and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Criminal Investigator and Law Enforcement Officer of the United States who is empowered by federal law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, and 21, United States Code including section 554(a) of Title 18 Attempted Unlawful Exportation.

2. I am a Special Agent with the U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been since October 2016. I have completed multiple federal law enforcement academies, including the Criminal Investigator Training Program (CITP) and the HSI Special Agent Training Program (HSISAT) at the Federal Law Enforcement Training Center in Glynco, Georgia. During CITP and HSISAT, I received training regarding investigative techniques relating to violations of federal laws, including the application and execution of search and arrest warrants. As such, I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. Prior to becoming a Special Agent, I was a United States Border Patrol Agent from January 2006 to October 2016 in Casa Grande, Arizona. In this assignment I was responsible for patrolling the international border area within the Casa Grande area of responsibility. This assignment included

22-04556MB

the interdiction and investigation of undocumented alien loads and smugglers, drug and narcotic loads and smugglers, and weapons smuggling loads.

4.  Through my training and experience, I have become familiar with the operations and practices of drug, weapons, and human smuggling organizations. In particular, I am familiar with the manner and methods used by smuggling organizations to illegally import, export, distribute and sell illegal drugs, undocumented aliens or firearms. I am also familiar with tactics employed by smuggling organizations to counter law enforcement techniques. I am familiar with counter-surveillance efforts, how to decipher ledgers, and how smuggling organizations utilize and modify mobile conveyances to facilitate the smuggling of contraband (narcotics, aliens, firearms, etc.)

5.  By virtue of my employment as a Special Agent, I have performed various tasks, which include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons involved in drug smuggling; (b) interviewing witnesses, cooperating sources ("CS") and sources of information ("SOIs") relative to drug smuggling and the distribution of monies and assets derived from the drug smuggling; and (c) functioning as a case agent, entailing the supervision of specific investigations involving drug smuggling.

6.  Through my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that drug-traffickers commonly use cellular telephones to communicate with their narcotics associates and to facilitate the commission of their narcotics offenses.  These cellular telephones usually contain electronically stored data on or within the cellular telephones, including, but not limited to, contact names and numbers of narcotics associates, call details including call history, electronic mail (email) messages, text messages and/or text message history, and digital images of the drug-trafficking associates and/or activity, all of which can be used to identify and locate narcotics-trafficking associates, to identify methods of operation of the drug-trafficking organizations (DTOs), and to corroborate other evidence obtained during the course of the current investigation.

22-04556MB

7.  In the course of conducting investigations, I have personally interviewed persons involved in drug smuggling.  I have consulted with other experienced investigators concerning the practices of drug smugglers and the best methods of investigating them.  In preparing this Affidavit, I have conferred with other Special Agents and law enforcement officers involved in this investigation.  Furthermore, I have personal knowledge of the following facts or have learned them from the individuals mentioned herein.

8.  Your Affiant submits this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the contents of electronic communication devices capable of accessing the internet (the Target Smartphone, defined below), and the extraction from the Target Smartphones of electronically stored information further described in Attachment B hereto.  Because this affidavit is being submitted for the limited purpose of securing a warrant to search the Target Smartphone, your Affiant has set forth only the facts which your Affiant believes are necessary to establish probable cause to search the Target Smartphone.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

9.  The electronic communication device to be examined is described as: one (1) Apple iPhone 11 cellular telephone (hereinafter referred to as the "***Target Smartphone***").  The ***Target Smartphone*** is currently located in the low-risk evidence vault at the HSI Sells office located in Sells, Arizona.  The particular ***Target Smartphone*** to be searched pursuant to the attached Application is further described in Attachment A hereto.

//

22-04556MB

## <u>BACKGROUND ON SMARTPHONES</u>

10. Based upon my knowledge, training, and experience, as well as information related to your Affiant by law enforcement officers and others experienced in the forensic examination of electronic communication devices, your Affiant knows that certain types of cellular telephones referred to as "smartphones" (such as the ***Target Smartphone***) generally offer more advanced computing ability and internet connectivity than standard cellular telephones.  Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

11. As described in Attachment B hereto, this affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes what individual(s) used the ***Target Smartphone*** as well as the purpose of its use. Additionally, this affidavit seeks information about the possible location of other evidence.

12.  Although some of the records requested in this affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), electronic communication devices (such as the Target Smartphone) can contain other forms of electronic evidence that are not user-generated.  In particular, an electronic communication device may contain records of how it has been used and/or the person(s) who utilized the electronic communication device.  Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

22-04556MB

a.  Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

b.  Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

c.  Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication devices that can reveal information such as online nicknames and passwords;

d.  Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

e.  Computer file systems can record information about the dates that files were created and the sequence in which they were created.  This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

f.  When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences;

g.  The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying an electronic communication device user, and contextual evidence excluding an electronic communication device user.  All of these types of evidence may indicate ownership, knowledge, and intent to commit a given offense; and

h.  The foregoing type of evidence is not "data" that can be segregated, that is, this type of information cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators.  Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used.  Therefore, contextual information necessary to understand the evidence described in Attachment B hereto also falls within the scope of the warrant.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN DRUG SMUGGLING ORGANIZATIONS

13. Based upon my knowledge, experience, and training in drug smuggling investigations, as well as the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant knows that there are certain characteristics common amongst individuals involved in drug smuggling.  Individuals involved in drug Smuggling activity tend to:

a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

b. Collect data pertaining to other co-conspirators involved in smuggling activity, including persons and services provided, as well as monies owed and/or paid for illegal activities;

c. Possess and maintain records reflecting bank transactions and/or money transfers;

d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the Target Smartphone).  These records are often maintained for several years and

are kept close in close proximity to the smuggler, usually at the individual's residence, to enable the smuggler to review the records, which are highly valued;

e. Correspond with and/or meet with other smuggling associates to share smuggling information and/or materials;

f. Retain correspondence from other smuggling co-conspirators relating to smuggling activity; and

g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the smugglers have been in contact and/or conducted smuggling activity.

## **PROBABLE CAUSE**

14. Your Affiant submits that there is probable cause to believe that the Target Smartphone requested to be searched may contain evidence identifying: (1) cellular telephone numbers used by drug trafficking associates; (2) telephone calls conducted with drug trafficking co-conspirators (to include time, date, and duration of calls); (3) photographs of and/or with drug trafficking co-conspirators, illegal controlled substances, and/or currency; (4) text and/or voicemail message communications (including time and date) with drug trafficking associates; (5) electronic mail and social media internet sites accessed by the user of the Target Smartphones; and (6) usernames and/or passwords utilized by the user of the Target Smartphones to access electronic mail and social media internet sites.

15. Based on your Affiant's training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, your Affiant knows that DTOs utilize cellular telephones (such as the Target Smartphone) to communicate when conducting their illegal activity, utilizing voice, text, and electronic mail (if accessible) functions of the cellular telephone to do so. These devices are utilized in furtherance of the crime by coordinating the transport and

distribution of controlled substances, the collection and movement of currency as well as communicating with members of the DTO about the specific operations of that DTO.

16. On May 20, 2021, at approximately 11:18 am, Customs and Border Protection Officers (CBPOs) conducting inspections at the primary operations point at the Lukeville Port-Of-Entry encountered a black Camaro bearing Nevada plate NX101649.  Canine Enforcement Officer Mario Fierro used his Human and Narcotics Detection Dog "Amis" to conduct an open-air sniff around the vehicle before primary inspection.  "Amis" is trained to alert to specific smells, including drugs and humans. "Amis" alerted to a trained odor emanating from the vehicle.  CBPO Fierro then advised CBPO B. Phillips who was conducting primary inspections that the vehicle should be screened using the Z-Portal.

17. CBPO B. Phillips received a negative Customs declaration for plants, fruits, meats, vegetables, monetary instruments over 10,000.00 USD, and/or contraband in the vehicle from the sole occupant of the vehicle, later identified as, Latryce Marie REID-Pitre.  CBPO B. Phillips asked REID-Pitre about her travel and she stated that she was on vacation in Rocky Point and was now headed home to Phoenix, Arizona.[1]

18. The vehicle was referred to secondary screening and driven through a Z-portal machine which produces an x-ray image of the vehicle.  CBPO C. Nelson noticed anomalies in the image in both rear quarter panels of the vehicle. After a search of the quarter panels, CBPO A. Wonderley found 19 small bundles wrapped in black tape.

19. The bundles containing suspected drugs were tested using the MX908 Portable Mass Spectrometer.  The initial test was positive for phencyclidine (PCP) and fentanyl.  A second test, using a different sample, resulted positive for the characteristics of fentanyl only.  The total weight of the drugs was 6.69 Kgs of methamphetamine, 1.06 Kgs of fentanyl base, and 1.92 of Fentanyl pills.

---

[1] Rocky Point is a common reference to Puerto Penasco, Sonora, Mexico.

20. Task Force Officer (TFO) W. Wilson was assisting TFO G. Potter with processing the evidence that was seized and noticed the phone belonging to REID-Pitre was repeatedly receiving calls and notifications. The phone was locked so agents could not view any information belonging to the missed calls and/or texts.

21. From my training an experience I know that it is common for a drug trafficking facilitators to call the driver in order to verify if they traveled past the checkpoint and/or Port-of-Entry.

22. After agents read and advised REID-Pitre of her Miranda rights she became very emotional and later stated "I know how this shit works." She asked, "what is this trafficking?", "what is that prison time [for this offense]?", and whether she would be provided protection if she chose to talk. Agents concluded the interview after REID-Pitre invoked her right to counsel.

23. The Target Smartphone was seized per HSI guidelines and stored at the low-risk vault in Sells, AZ.

24. Based on training and experience, your Affiant is aware drug smugglers and coordinators routinely communicate via SMS/text message prior to and immediately after conducting transactions.

25. Based upon the above, your Affiant believes that probable cause exists to search the Target Smartphone for the items set forth in Attachment B hereto. Your Affiant believes that the Target Smartphone contains evidence relating to the commission of a criminal offense, that is, Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841, as well as constitutes property designed for use, intended for use, or used in committing the aforementioned crime.

Respectfully, submitted this ___19th___ day of  May 2022.

ROBERT V
FIGUEROA III

Digitally signed by ROBERT V
FIGUEROA III
Date: 2022.05.19 10:18:27 -07'00'

Robert V. Figueroa III, Special Agent, HSI

Electronically Submitted,
Subscribed to and Sworn
before me this __19th___ day of May 2022.

MARIA S. AGUILERA
United States Magistrate Judge

22-04556MB

## **ATTACHMENT A**

The property to be searched is:

One (1) Apple iPhone 11 cellular telephone. The ***Target Smartphone*** is currently located at the HSI Sells office located in Sells, Arizona.

This warrant authorizes the forensic examination of the Device for the purpose of identifying stored information described in Attachment B.

22-04556MB

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEARCHED FOR

1.      Data and/or digital files stored on or accessed through the Target Smartphone (as described in Attachment A) relating to drug trafficking, wherever it may be stored or found, specifically including:

a.      lists of customers and related identifying information;

b.      types, amounts, and prices of smuggling fees, as well as dates, places, and amounts of specific transactions;

c.      types, amounts of money obtained, received, exchanged, deposited, withdrawn, or delivered as well as dates, places, exchange rates, and amounts of specific transactions;

d.      any information related to sources of money or narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

e.      all bank records, checks, credit card bills, account information, and other financial records.

2.      Electronic correspondence stored on or accessed through the Target Smartphone relating to drug trafficking, to include emails and attached files, text messages, and instant messaging logs.

3.      Information related to incoming calls, outgoing calls, missed calls, and duration of calls stored on or accessed through the Target Smartphone.

4.      Contact lists stored on or accessed through the Target Smartphone, to include telephone and email contact names, telephone numbers, addresses, and email addresses.

5.      Evidence of persons who used, owned, or controlled the Target Smartphone.

6.      Logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, electronic correspondence, and telephone contact lists stored on or accessed through the Target Smartphone.